486 A.2d 163

**John Lee LEONARD a/k/a Samad Abdul Taawwab**

v.

**STATE of Maryland.**

**No. 55, Sept. Term, 1983.**

Court of Appeals of Maryland.

Jan. 8, 1985.

Arthur A. DeLano, Jr., Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Ann E. Singleton, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ.

COLE, Judge.

The issue in this case is whether the trial court was required to conduct a waiver of counsel inquiry before allowing the defendant to proceed *pro se.*

The facts are as follows. John Lee Leonard was indicted for possession with intent to distribute a controlled dangerous substance, simple possession, and conspiracy. Keith Krissoff entered his appearance as Leonard's assigned public defender.

---

* Davidson, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion of the Court.

On May 21, 1982, a hearing was held in the Circuit Court for Anne Arundel County on Leonard's motion to suppress evidence. Leonard was not present. Sergeant Russell Hall of the Annapolis Police Department testified that he received information from a confidential informant that Leonard was selling heroin from a blue Grand Prix with New York registration in the vicinity of Clay and Washington Streets in Annapolis. Sergeant Hall found Leonard who, after some preliminary negotiations, sold Sergeant Hall "a pharmacy fold" of purported cocaine for fifty dollars. When the officer realized that the pharmacy fold was empty, he signaled his back-up unit to arrest Leonard. The automobile was taken to the Annapolis Police Station where a search conducted pursuant to a search warrant revealed thirteen glassine envelopes of heroin. The Circuit Court denied Leonard's motion to suppress this evidence.

When the court called Leonard's case for trial on May 25, 1982, he requested a postponement to locate a witness known to him only by the name of "Fish." The trial court denied his request in the following colloquy with Leonard:

COURT: That's clear. You've had reasonable opportunity [to locate the witness]. You didn't even disclose this witness to your attorney. The court denies the request for a continuance.

MR. LEONARD: What about...can I get...can I get appointed another counsel?

COURT: No.

MR. LEONARD: Why not?

COURT: Because I said so.

MR. LEONARD: Just because you say so, I don't think he's [Krissoff] fairly representing me. Why can't I get appointed other counsel?

COURT: He has done an...he's done an excellent job representing you.

MR. LEONARD: Well, he's not representing me, then.

COURT: Well, you've made your motion and I've refused it.

Immediately after this exchange, Leonard unsuccessfully attempted to leave the courtroom. After sheriffs restrained him, Leonard explained that, "I don't want an unfair trial. I don't want [Krissoff] to represent me. You can throw me in the bullpen. That's alright with me." Leonard then tried to leave the courtroom, but was again physically restrained by sheriffs. The court ordered the sheriffs to remove Leonard from the courtroom, and indicated that the trial would continue with Leonard outside the courtroom but that Krissoff could consult with Leonard whenever Krissoff liked.

Upon completing the voir dire of prospective jurors, the trial court allowed Krissoff to consult with Leonard concerning the remaining peremptory strikes and to ascertain whether Leonard wanted to return to the courtroom. After Krissoff consulted with Leonard, the following exchange transpired:

MR. KRISSOFF: Your Honor, for the record, Keith Krissoff ... subsequent to the Voir Dire of the jury I went down and conferred with Mr. Leonard. He indicated to me that it was his desire to represent himself in this matter. I explained to him what benefit I could be to him in the trial and indicated to him that I thought I could be of substantial benefit to him, that I thought he had a reasonable chance in this case. Despite that, he indicates that he wants to represent himself and I believe under the case law, if the court finds that that's what...

COURT: I have no problem.

MR. KRISSOFF: ... he really wants to do...

COURT: I'll permit it provided he conducts himself in an orderly manner representing himself, but I won't discharge you. You'll remain as counsel for any consultation or any use that he may choose to use.

MR. KRISSOFF: I have a problem with that, Your Honor, in that what am I doing at the trial table if I'm not representing him?

COURT: You're there because of my order ... just as simple as that. Okay. Let's bring him up and see if he'll conduct himself in an orderly manner. Back to the trial table.

When Leonard returned to the courtroom, he advised the court that he wanted to conduct his own defense:

COURT: Alright. You can approach the bench. (Bench conference)

COURT: Mr. Leonard, at the bench, sir. (Defendant approaches the bench.)

COURT: *I understand you want to conduct your own defense.*

MR. LEONARD: *That's the only choice I got.*

COURT: *I take it your answer is yes?*

MR. LEONARD: *It's got to be yes. It's the only choice I have.*

COURT: *Alright.* I'm going to allow Mr. Krissoff to stay ...

MR. LEONARD: *I don't want you to allow him to do nothing. I have a right to do it* (all in one man). (Mr. Leonard's diction is not proper.)

COURT: Well, fine.

MR. LEONARD: (?)

COURT: You have a right to ... Mr. Leonard, do you want to let me finish?

MR. LEONARD: You can finish, man. I'm ready to go on with it. I don't want to hear no more you got to say about it.

COURT: Well, you're going to hear what I have to say. Mr. Krissoff is going to sit at the table. You can consult with him or not as...

MR. LEONARD: I'm not consulting with him...

COURT: That's up to you.

MR. LEONARD: ... I'm letting you know now.

COURT: That's up to you.

MR. LEONARD: *So don't even put it on the record about he's a legal advisor for me, because he's not.*
COURT: He's going to ...
MR. LEONARD: *He's not no legal advisor for me.*
COURT: Are you finished?
MR. LEONARD: Right.
COURT: He's going to sit at the table for you to consult with. If you choose to avail yourself of him, that's your privilege.
MR. LEONARD: I don't need him. I don't want him there.
COURT: That's your ...
MR. LEONARD: Don't keep telling me that.
COURT: I intend to keep telling you until I get it on the record exactly what I want to do.
MR. LEONARD: I don't care what you want to do.
COURT: Mr. Leonard ...
MR. LEONARD: I tell you, I don't care what you want to do.
COURT: ... you have a charge against you which is serious enough.
MR. LEONARD: I'm not guilty of the charge and you're trying to force me to try it because the witness ain't here to testify ... and (?) ... you're telling lies about me.
COURT: Finished? Do you understand how we're proceeding?
MR. LEONARD: Sure. [Emphasis supplied]

After the jury was selected and sworn, the trial court stated:

The defendant has chosen to represent himself ... which is his privilege. I have ordered [Krissoff] to stay at the table for Mr. Leonard to consult or not to consult as he sees fit with his attorney of record. That's up to him. But he has indicated that he wishes to conduct his own defense and the court obviously is going to permit him to do that.

The trial then proceeded, with Leonard acting as his own counsel. Leonard made opening and closing statements to the jury, interposed objections, cross-examined the prosecution's witnesses, and called two witnesses in his own defense. The trial court advised Leonard of his right to remain silent and made a motion for a directed verdict on his behalf.

At the conclusion of the case, the court asked Krissoff if he wished any particular jury instructions. Leonard interposed: "I'd like to state again that Mr. Krissoff is not representing me and he's not no legal advisor for me." Finally, Krissoff answered the question, summarizing his participation in the trial:

> MR. KRISSOFF: Your Honor, I'd like it put on the record that Mr. Leonard has indicated that he doesn't want me to represent him. I know the court has ordered me to be here. I've been here, available for consultation, but out of respect for Mr. Leonard and his desire to proceed on his own, he has indicated he wants me to make no objections, to make no statements to the court, to make no statements to the jury ... I have honored his request and the court will note that throughout the trial I made no objections, even though I would have, obviously, had I been conducted the trial ... because that is Mr. Leonard's wish with regard to my participation in the case. I am going to honor that wish. I think the court should, obviously, instruct as it sees fit.

The jury convicted Leonard of possession with intent to distribute a controlled dangerous substance and conspiracy, and the court sentenced him to ten years' imprisonment to run consecutive to any sentence Leonard was then serving. The Court of Special Appeals affirmed his conviction and sentence in an unreported per curiam opinion filed March 23, 1983, reasoning that Leonard's "tactics did not indicate a waiver of his right to counsel. He clearly wanted new counsel. Under the circumstances he was not entitled to new counsel." We granted certiorari to determine the issue presented.

■ Two independent constitutional rights are involved in this case: the right to be represented by counsel and the right to defend *pro se*. The rights are mutually exclusive and the defendant cannot assert both simultaneously. The United States Supreme Court and other courts throughout the nation have thus sought to protect the right to counsel unless the defendant properly asserts his right to represent himself. The assertion of this right is conditioned upon a valid waiver of the right to assistance of counsel.

In *Powell v. Alabama,* 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158, 171–72 (1932), the Supreme Court held that the right to assistance of counsel was guaranteed by the sixth and fourteenth amendments[1] and concluded that due process requires that, at least in capital cases, counsel be appointed for a criminal defendant. The Supreme Court subsequently extended the right to assistance of counsel to all criminal defendants in federal courts and enunciated the standard of proof of waiver of the right to counsel. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The *Johnson* Court stated:

> It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*Id.,* 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466 (footnotes omitted).

---

1. The sixth amendment provides that the accused in a criminal prosecution "shall enjoy the right ... to have the Assistance of Counsel for his defence." The right to counsel provisions of Article 21 of the Maryland Declaration of Rights are in *pari materia* with the sixth amendment. *Sites v. State,* 300 Md. 702, 712 n. 3, 481 A.2d 192, 197 n. 3 (1984).

A decade after its decision in *Johnson* the Court elaborated on the waiver requirement in a case involving a defendant who had been indicted for conspiracy to violate the Espionage Act of 1917. *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (plurality opinion). In that case, Von Moltke was arrested by federal agents and was detained for over a month without the benefit of counsel. She was eventually taken to federal district court where, after signing a document stating that she waived the " 'right to be represented by counsel at the trial of this case,' " she pleaded guilty. No counsel was present during this proceeding. The plurality quoted *Johnson v. Zerbst* and its standard of proof of waiver of the right to counsel. The *Von Moltke* court concluded:

> To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Id.,* 332 U.S. at 723–24, 68 S.Ct. at 323, 92 L.Ed. at 321 (footnote omitted); *see also Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942).

■ In 1963, the Court extended the right to counsel to all indigent defendants in state criminal proceedings. *Gide-*

*on v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Not until 1975, however, did the Court determine that a defendant in a state criminal trial has an independent constitutional right of self-representation under the sixth and fourteenth amendments. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975); *see McKaskle v. Wiggins,* —— U.S. ——, ——, 104 S.Ct. 944, 950, 79 L.Ed.2d 122, 132 (1984) ("The right to appear *pro se* exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense."); *State v. Renshaw,* 276 Md. 259, 267, 347 A.2d 219, 225 (1975); *see also State v. Berry,* 287 Md. 491, 413 A.2d 557 (1980); *State v. Bryan,* 284 Md. 152, 395 A.2d 475 (1978); *Thompson v. State,* 284 Md. 113, 394 A.2d 1190 (1978). The *Faretta* Court cautioned, however, that a defendant may proceed *pro se* only when he voluntarily and intelligently elects to do so. In this regard, the Court emphasized that the accused "should be made aware of the dangers and disadvantages of self-representation, so that the court will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582 (quoting *Adams v. United States ex rel. McCann, supra,* 317 U.S. at 279, 63 S.Ct. at 242, 87 L.Ed. at 275). The dissent in *Faretta,* however, pointed out that the majority failed to establish any practical procedural guidelines for courts to decide whether and how a defendant is to exercise the right to proceed *pro se. Faretta v. California, supra,* 422 U.S. at 852, 95 S.Ct. at 2549–50, 45 L.Ed.2d at 591–92 (Blackmun, J., dissenting).

Interestingly, Maryland in 1972 had already recognized the constitutional implications of the right to counsel and the right of a defendant to represent himself if he intelligently and voluntarily waived his right to counsel. This recognition was evidenced in Maryland Rule 719, the pre-

cursor to Rule 723 c.[2]  Because the rule is intended to implement the constitutional rights, our task is limited to determining whether the trial court complied with the dictates of Rule 723 c.

Rule 723 c provides:

c. *Waiver Inquiry.*

When a defendant indicates a desire or inclination to waive counsel, the court may not accept the waiver until it determines, after appropriate questioning on the record in open court, that the defendant possesses the intelligence and capacity to appreciate the consequences of his decision, and fully comprehends:

1.  The nature of the charges against him, any lesser included offenses, and the range of allowable penalties, including mandatory and minimum penalties, if any;

2.  That counsel can render important assistance to him in determining whether there may be defenses to the charges or circumstances in mitigation thereof, and in preparing for and representing him at trial;

3.  That even if the defendant intends to plead guilty, counsel may be of substantial assistance in developing and/presenting information which could affect the sentence or other disposition;

4.  That if the defendant is found to be financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him.

This rule establishes that when a defendant properly asserts the right to proceed *pro se* and has complied with the waiver provisions under Rule 723, the defendant has the right to self-representation absolutely.  A brief review of our cases that have analyzed the waiver inquiry provisions

---

**2.**  The Court of Appeals by Order dated April 6, 1984, approved and adopted effective July 1, 1984, a revision of the Maryland Rules. This revision resulted in the redesignation of Md. Rule 723 c to Md. Rule 4–215.

in light of a defendant's desire or inclination to proceed *pro se* will make clear the operation of this rule.

In *State v. Renshaw, supra,* defense counsel explained to the trial court on the first day of trial that Renshaw was dissatisfied with counsel's efforts and that Renshaw desired new counsel. When the trial court asked Renshaw why he desired new counsel, Renshaw responded that he felt that his appointed counsel lacked faith in him, that his counsel believed him to be lying, and that he lacked confidence in his counsel. The court denied Renshaw's request, but allowed Renshaw to proceed and expressly instructed defense counsel to stand by and assist Renshaw only if the latter so desired. During the trial Renshaw as well as his standby counsel remained silent. On appeal, we held that Renshaw's request for different counsel did not constitute a waiver of the sixth amendment right to counsel, and consequently the trial court should have taken steps to ensure effective legal representation for the defendant. *Id.,* 276 Md. at 268, 347 A.2d at 226. We noted that courts must indulge every reasonable presumption against waiver and may not presume waiver from a silent record. *See* Md. Rule 723 e (record must reflect compliance with waiver inquiry provisions).

Four years after our decision in *Renshaw,* we had another opportunity to determine whether a trial court erred in failing to conduct a waiver of counsel inquiry under Rule 723 c. *Snead v. State,* 286 Md. 122, 406 A.2d 98 (1979). In *Snead,* the defendant urged the trial court on the first day of trial to consider his previously filed motion for a continuance, which had been filed on the basis that he was allegedly ill. During his discussion of the motion with the court, Snead expressed dissatisfaction with his assigned public defender and explained that he "would like to get a delay in this case to get my nephew and my family time to get another attorney." The court denied Snead's request, reminding him that he had had sufficient time to secure other counsel. Once Snead realized that the trial court was not going to grant the requested continuance, Snead told the

court, "I don't want no attorney then." *Id.*, 286 Md. at 126, 406 A.2d at 100. The trial court did not accede to this demand and indicated that Snead would have to proceed with his appointed counsel. Snead's subsequent convictions were affirmed by the Court of Special Appeals in an unreported decision. We reversed, holding that Snead's statement ("I don't want no attorney then") was a sufficient assertion of his right to proceed *pro se.* We further held that the trial court committed reversible error by failing to conduct a Rule 723 c waiver inquiry to determine whether Snead's decision to represent himself was knowing and voluntary.

■  We made clear in *Snead* that to establish the minimum "declaration" sufficient to constitute assertion of the right to self-representation, the "declaration [must serve] to alert the trial judge that further inquiry may be necessary. Therefore, any statement by the defendant from which the court could reasonably conclude that the defendant desired self-representation would be sufficient." *Id.*, 286 Md. at 127, 406 A.2d at 101. Once a defendant indicates a desire or inclination to represent himself, the trial court must determine that the defendant's election to proceed *pro se* is unequivocal and that the defendant fully appreciates the consequences of proceeding without the assistance of counsel.

■  An examination of these cases in light of the requirements set forth in Rule 723 c demonstrates that a defendant is not required to utter a talismanic phrase so as to place the court on notice that he desires self-representation. "Any statement by the defendant from which the court could reasonably conclude that the defendant desired self-representation would be sufficient." *Id.*, 286 Md. at 127, 406 A.2d at 101. In view of this standard, we must determine whether the trial court in the instant case committed reversible error in failing to conduct a Rule 723 c waiver inquiry.

Although Leonard appeared at trial with appointed counsel, he requested that the trial court appoint other counsel to represent him. The trial court, in accordance with the dictates of *Renshaw,* determined that the defendant had not shown adequate cause and correctly denied this request. Leonard, however, did not stop there. Leonard made other statements before trial that, in our view, should have led the court reasonably to conclude that Leonard desired self-representation.

Immediately after the trial court denied Leonard's request for new counsel, Leonard stated, "Well, [Krissoff is] not representing me," and "I don't want [Krissoff] to represent me." When Leonard was returned to the courtroom after he was ordered outside by the court, the following critical colloquy occurred:

COURT: *I understand you want to conduct your own defense.*

MR. LEONARD: *That's the only choice I got.*

COURT: *I take it your answer is yes?*

MR. LEONARD: *It's got to be yes. It's the only choice I have.*

COURT: *Alright.* I'm going to allow Mr. Krissoff to stay . . . .

MR. LEONARD: I don't want you to allow him to do nothing. I have a right to do it (all in one man). (Mr. Leonard's diction is not proper) [emphasis supplied.]

Leonard further insisted that Krissoff "is no legal advisor for me" and that he "don't need [Krissoff]" and he "don't want him [at the defense table.]"

It seems obvious to us that Leonard expressed in clear terms a "desire or inclination" to represent himself, and that his statements should have led the trial court reasonably to conclude that Leonard desired self-representation. *Cf. Howell v. State,* 293 Md. 232, 241, 443 A.2d 103, 107 (1982) (defendant at no time indicated a desire or inclination to proceed *pro se;* defendant persistently, repeatedly, and without deviation explicitly asserted that he wanted to be

represented by counsel). In particular, Leonard's affirmative response to the court's inquiry as to whether he wanted to conduct his own defense was, standing alone, sufficient to trigger an inquiry under Rule 723 c to ascertain whether he truly wanted to represent himself. Although the defendant's response in *Snead* that, "I don't want no attorney then," differs in form from that of Leonard's response, we see no substantive difference between the two statements. Moreover, Leonard's insistence that he did not want to be represented by Krissoff dispels any contention that Leonard was seeking hybrid representation. *Cf. Colvin v. State*, 299 Md. 88, 99–101, 472 A.2d 953, 958–59 (defendant did not indicate a desire to defend *pro se* when he stated that he be allowed to defend himself "to a degree"; defendant was "at best" seeking hybrid representation, thereby foreclosing the need to conduct a Rule 723 c waiver inquiry), *cert. denied*, —— U.S. ——, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984). Because Leonard's statement was sufficient to alert the court that he desired self-representation, we conclude that the trial court was required to conduct the requisite inquiry.

The State seeks to avoid this conclusion by arguing that Leonard's behavior effectively prevented the trial court from conducting the requisite waiver of counsel inquiry. Under this theory, the State seems to contend that Leonard's behavior foreclosed and excused totally a Rule 723 c waiver inquiry. Although the proposition that a defendant's conduct may in some limited circumstances preclude a Rule 723 c inquiry is correct in the abstract, we are unable to agree with the State that this proposition has any application to these facts. A brief explanation of our rationale will reveal the flaw in the State's argument.

The Maryland Rules governing waiver of counsel recognize that a defendant may waive his right to counsel by conduct. Md. Rule 723 d 2 (now Md. Rule 4–215(c)); *see Brown v. State*, 50 Md.App. 651, 441 A.2d 354 (1982) (defendants by their actions effectively waived their right to counsel). For example, a defendant may waive his right to counsel, either affirmatively or by neglecting or refusing to

obtain counsel. Md. Rules 723 b 7, 723 d. Similarly, a defendant who engages in a pattern of deliberate, obstructionist misconduct may forfeit his right to self-representation. *See, e.g., Faretta v. California, supra,* 422 U.S. at 834–35 n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d at 581 n. 46 (suggesting that court may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct); *United States v. Dujanovic,* 486 F.2d 182, 187 (9th Cir.1973) (disruptive behavior may constitute constructive waiver of defendant's right of self-representation); *People v. Manson,* 71 Cal.App.3d 1, 49–50, 139 Cal.Rptr. 275, 302–03 (1977) (same), *cert. denied,* 435 U.S. 953, 98 S.Ct. 1582, 55 L.Ed.2d 803 (1978); *Commonwealth v. Chapman,* 8 Mass.App. 260, 267 & n. 6, 392 N.E.2d 1213, 1217–18 & n. 6 (1979) (same); *People v. Krom,* 91 A.D.2d 39, 45–46, 458 N.Y.S.2d 693, 698–99 (1983) (same), *aff'd,* 61 N.Y.2d 187, 461 N.E.2d 276, 473 N.Y.S.2d 139 (1984); *Coleman v. State,* 617 P.2d 243, 245 (Okla.Crim.App.1980) (same).

A related question, and one which the State argues is at issue in this case, is whether a defendant's disruptive conduct can ever rise to such a level to excuse a Rule 723 c inquiry. Our short answer to the State's argument is that circumstances may arise where the defendant is so disruptive during the trial court's attempt to advise him of the dangers and disadvantages of self-representation that the court would be justified in terminating its inquiry. In our view, these circumstances would be rare indeed. When it does occur, however, the record must be indelibly clear that the trial court made reasonable efforts to comply with Rule 723 c. The defendant's disruptive and obstreperous conduct during these efforts must be of a magnitude such as effectively to thwart the court from complying with the Rule or to reduce the proceeding to a mockery. Under all the circumstances, the record must clearly reflect that the trial court made a reasonable effort to inform the defendant of his rights.

In the case *sub judice* the record is devoid of any reasonable effort by the trial court to engage in a Rule 723 c waiver inquiry. When it seemed most logical for the trial court to conduct this inquiry, it merely reiterated that Krissoff would act as Leonard's standby counsel. Simply stated, the trial court made no attempt on the record to comply with Rule 723 c. Absent such an effort, we are unable to conclude that Leonard's conduct prevented the court from complying with Rule 723 c. It is obvious from the record that the trial court was annoyed, to say the least, by Leonard's courtroom behavior. But this annoyance, standing alone, does not justify foregoing the Rule 723 c inquiry. It may have been prudent under these circumstances to recess the proceedings to allow the defendant to calm down as well as to help the trial court maintain its bearing. As one court put it:

> After all, in spite of the lofty historical and intellectual approach of *Faretta*, those with trial experience are quite aware that every prospective pro per is not necessarily sincerely convinced that his decision to represent himself is going to assure him of a trial more fair than if he were represented by a skilled, and experienced professional. Whether the prospective pro per is a naive character who sincerely believes he can represent himself better than can a lawyer, a cagey loser who is going to try to reduce the trial to a shambles in the hope that somehow reversible error will creep in, a free soul with a touch of ham, or simply someone who wants to have some fun with the judicial establishment, the trial judge must recognize that the first ground of appeal is probably going to be that the defendant was allowed to represent himself without having intelligently and voluntarily made that decision. Such are the facts of life. Therefore, pragmatically, and defensively, in addition to the legal necessity of establishing that a defendant voluntarily and intelligently reached this decision, the trial court should also protect itself—and the record.

*People v. Lopez,* 71 Cal.App.3d 568, 571–73, 138 Cal.Rptr. 36, 38 (1977).

Accordingly, because the record fails to indicate that Leonard's behavior prevented the trial court from making a reasonable effort to conduct a Rule 723 c waiver inquiry, we hold that the trial court committed reversible error in failing to conduct this inquiry in response to Leonard's desire to proceed *pro se.*

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR A NEW TRIAL. ANNE ARUNDEL COUNTY TO PAY THE COSTS.