536 A.2d 1149

**Jeffrey FOWLKES a/k/a Anthony Johnson**

v.

**STATE of Maryland.**

**No. 61, Sept. Term, 1986.**

Court of Appeals of Maryland.

Feb. 10, 1988.

588

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH,* and McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

ELDRIDGE, Judge.

■ The Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights provide that, in all criminal prosecutions, a defendant has the right to the assistance of counsel. Nonetheless, a defendant may waive the right to counsel, provided "he knows what he is doing and his choice is made with his eyes open." *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942).

Under the Sixth Amendment, a defendant also has an independent right to reject the assistance of counsel and to elect to represent himself. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975). A defendant may exercise his *Faretta* right of self-representation only if he knowingly, intelligently, and voluntarily waives his right to counsel. *Parren v. State,* 309 Md. 260, 266, 523 A.2d 597, 599–600 (1987). If a defendant waives the right to counsel and asserts his *Faretta* right of self-representation, the trial court must permit him to represent himself. *See Faretta, supra,* 422 U.S. at 836, 95 S.Ct. at 2541, 45 L.Ed.2d at 582; *Snead v. State,* 286 Md. 122, 130, 406 A.2d 98 (1979).

The interplay among the right to counsel, waiver of the right to counsel, and the *Faretta* right of self-representation, has posed problems when, shortly before or at the beginning of trial, a defendant makes an unmeritorious demand for the discharge of current counsel and for the appointment or retention of different counsel, and where, as is usually the situation, the appointment or retention of new counsel would require a trial postponement. If the trial judge properly refuses to grant such demand, a defendant will often attempt to delay the proceedings by refusing either to proceed with current counsel or to make an affirmative election of his *Faretta* right of self-representation. In such circumstances, where a postponement would be improper, the trial judge is faced with the dilemma of forcing the defendant to trial without an attorney or forcing the defendant to proceed with an unwanted attorney.

In 1975, in *State v. Renshaw*, 276 Md. 259, 267, 347 A.2d 219, 225 (1975), this Court held that, in these circumstances, the defendant's demand for different counsel does not constitute a waiver of the Sixth Amendment right to counsel. The Court took the position that, under the federal Constitution, the trial court must require current counsel to continue providing legal representation in this situation, notwithstanding the defendant's objections (276 Md. at 270, 347 A.2d at 227). In 1984, we promulgated Maryland Rule 4–215(e),[1] which permits a trial court, in some circumstances, to treat such a demand as a waiver of the right to counsel and to require the defendant to represent himself. The principal question in this case concerns the validity of the rationale underlying *Renshaw*, and the apparent conflict between *Renshaw* and provisions of Rule 4–215(e).

## I.

The pertinent facts are as follows. On July 2, 1984, the State filed a criminal information against the defendant Jeffrey Fowlkes, charging him with having unlawfully possessed narcotics paraphernalia. On August 28, 1984, the defendant appeared before the Circuit Court for Baltimore City, which set a trial date. At that time, the defendant was unrepresented by counsel and signed a "Notification of Right to Counsel."[2] The defendant appeared for trial on December 6, 1984, but the court postponed his case because of a crowded docket. At that time, he was represented by an attorney from the Office of the Public Defender. After

---

1. Until the adoption of an amendment effective July 1, 1986, Rule 4–215(e) was designated Rule 4–215(d). The amendment effected no substantive changes.

2. The Notification of Right to Counsel is a document that the circuit court uses when a defendant appears before the court in a preliminary matter without counsel. Both the judge and the defendant sign this document. By so doing, they certify that the judge has advised the defendant in detail of the right to counsel. Additionally, the judge certifies that, in his opinion, the defendant has the capacity to understand the consequences of not obtaining a lawyer or a Public Defender.

purporting to "waive" the statutory requirement that a circuit court criminal defendant ordinarily be tried within 180 days,[3] the defendant again appeared for trial on March 13, 1985; an Assistant Public Defender, Bridget Shepherd, was present representing him.

At the beginning of the trial proceedings, the State offered a plea bargain agreement. Under this agreement, in exchange for a guilty plea, the State would recommend a maximum sentence of thirty days imprisonment to be served concurrently with a term of imprisonment that the defendant was then serving. Ms. Shepherd attempted to place it on the record that the defendant had rejected her recommendation to accept this agreement. The trial court inquired as to whether the defendant understood that, if tried and convicted, he could receive up to a maximum of four years imprisonment. The defendant replied that he knew what he was doing.

As the parties awaited the arrival of the potential jurors, Ms. Shepherd began to argue a motion in limine on the defendant's behalf. While Ms. Shepherd was addressing the court, the defendant interrupted, stating that Ms. Shepherd did not have "the true evidence." [4] The judge instructed the defendant to address the court through his attorney, but the defendant responded: "I don't think she is any help to me anyway. If possible I would rather get rid of her, get new attorney." The judge assured the defendant that his attorney was "highly competent" and "could represent [him] well." The transcript then shows the following exchange:

---

**3.** Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 591; Rule 4–271(a). *See State v. Brown,* 307 Md. 651, 656–659, 516 A.2d 965 (1986).

**4.** The motion sought to bar the State from eliciting evidence concerning $589 that the police had claimed to have found in the defendant's possession when he was arrested. In arguing the motion, Ms. Shepherd referred to the allegation that the money had been recovered from the defendant's sock. While the defendant did not disagree that the money had been somewhere in his possession, he asserted that the money had not been in his sock.

"THE COURT: All right. Now, are you telling me that you do not want Miss Shepherd to represent you any more?

MR. FOWLKES: Yes.

THE COURT: Do you wish to represent yourself?

MR. FOWLKES: No. I'd rather have a private attorney, or get another attorney, because I feel as though the offer I have been offered today, I don't feel this attorney going to be any help to me.

THE COURT: I don't think it is going to be possible, but I will ask Miss Shepherd if another Public Defender can come over. Is that possible?

MS. SHEPHERD: I can call my office.

THE COURT: I am not postponing this case simply because you don't want Miss Shepherd to represent you. You can represent yourself.

MR. FOWLKES: I am not representing myself neither. I want somebody who knows legal law, what's going on with the case, which she is not doing."

Ms. Shepherd succeeded in obtaining the appearance of another Assistant Public Defender, Stanley Janor. When Mr. Janor arrived, the trial judge announced a recess, but advised the defendant that at the end of the recess he would have to decide whether he wanted Mr. Janor to represent him. "[I]f not," the judge warned, "you are going to have to represent yourself, because we are going to try this case today."

When the proceedings resumed, Mr. Janor stated that the two Assistant Public Defenders had told the defendant that they would represent him but that Ms. Shepherd would have to serve as lead counsel, with Mr. Janor assisting her in certain phases of the trial. Mr. Janor reported that the defendant had objected not only to that arrangement but also to the trial going forward under any circumstances.

At that point, the defendant interrupted. In a lengthy monologue, he claimed to have money to hire a private attorney, repeated his charge that the two Assistant Public

Defenders did not have "the true facts," and complained that one of his witnesses had not appeared. Ms. Shepherd immediately responded that her office had summoned all three of the defendant's witnesses, that two had appeared, and that the third was absent only because the defendant had not provided an accurate address. The transcript then shows that the following occurred:

"THE COURT: ... [S]ince you don't want Ms. Shepherd to represent you now, you have a right to discharge your attorney. And I am looking at the Maryland Rules right now ..., which give you the right to discharge your attorney.

MR. FOWLKES: Right.

THE COURT: I have the right though to determine whether your reason for discharging your attorney is meritorious. And we did offer you the possibility the Public Defender's Office offered you a possibility of having Mr. Janor join Ms. Shepherd, and you are now telling me you are turning down that offer. Is that right?

MR. FOWLKES: Yes.... [I]t seems that the evidence they got, or where they suppose to be representing me to help me, it don't show somewhere in fact that I could be represented by them on behalf of honesty. The way it go in the case, it don't seem right. I rather go ahead get a private attorney. Go through the record. I feel they haven't had enough time to work on my case. They probably look like the case, seen like similar circumstances, evidence, nature of crime don't add up to the folders up out front.

THE COURT: Well, Mr. Fowlkes, you were indicted on July 2nd, 1984 in Criminal Information or—

MR. JANOR: A warrant case.

THE COURT: And you appeared for arraignment on August 29th, 1984.

MR. FOWLKES: Uh-huh.

THE COURT: It appears to me that you have had plenty of time to obtain counsel of your choice, and that

Ms. Shepherd has had plenty of time to prepare this case, and is ready to try the case, and is prepared to try the case, and that your summonses, your witnesses have been summonsed. That one witness was not summonsed because the address was a bad address, and I can find no meritorious reason for you wanting to discharge your counsel, but I can't force you to have counsel that you don't want to have. So the only choice you have, as I see it, and I would like either counsel in the case to correct me, or any counsel correct me if I am wrong, is that you are deciding to defend yourself, because I am going to try this case today?

MR. FOWLKES: No possible way I can defend myself. I am saying I can't represent myself in some behalf, but I am saying the whole possible nature of the crime is not going to add up to the point me trying to go out there with these twelve jurors, and these two police officers and three witnesses here. That's why I am incarcerated now going back on appeal, because of the same similar case I am trying to fight for now, and I am not going to go through it a second time. It's unreasonable.

THE COURT: Well, I have made the decision that your reasons are not meritorious, and that you are going to—we are going to proceed with this trial today as scheduled. There was a prior postponement on 12/6/84.

MR. FOWLKES: It was the State, wasn't it, who was—it was behalf of.

\* \* \* \* \* \*

MR. GILBERT [PROSECUTING ATTORNEY]: Not specifically. The Court postponed the case because of a crowded docket. It was already involved in a jury trial.

MR. FOWLKES: I am on bail. I should have a right to postpone my first trial. It just don't add up right. I mean, the State postponed the—it once. I got rights to postpone it too? Therefore should show—

THE COURT: Do you want to say anything?

MR. GILBERT: Yes, Your Honor. The Defendant has had plenty of time to retain private counsel. He has had over six months since the time of his arrest.

MR. FOWLKES: In D.O.C. I haven't seen talked about it.

MR. GILBERT: The Defendant was not in the Department of Correction until recently, last—

MR. FOWLKES: January 9th.

MR. GILBERT: ... He has been as free as a bird, Your Honor, until January, and that's plenty of time. When he was arrested, when he was charged in the District Court on the back of his statement of charges, which he signed, there is a notation there that he has a right to a Public Defender or private counsel.

THE COURT: All right. Well, I have made my decision, Mr. Fowlkes, and you will have to do what you want to do based on that, but I am ruling that your request is not meritorious. I am going to permit you to discharge counsel, because I cannot force you to take them or them to take you, but I do think it is necessary to make sure for the record that you understand what you are doing.

Mr. Gilbert, could you qualify him?

MR. FOWLKES: You say I have plenty of time?

THE COURT: As to—listen to what he is doing.

MR. GILBERT: Mr. Fowlkes, as you know I am Robert Gilbert. I am an Assistant State's Attorney. You know you have been assigned two Public Defenders to represent you?

MR. FOWLKES: I don't need two. That's what I am trying to tell you.

MR. GILBERT: Are you under the influence of any drugs or alcohol?

MR. FOWLKES: No, I am not.

MR. GILBERT: Are you under the care of a psychiatrist?

MR. FOWLKES: No, I am not.

MR. GILBERT: Have you ever received any psychiatric treatment?

MR. FOWLKES: No, I have not.

MR. GILBERT: Okay. Do you understand your right to have an attorney?

MR. FOWLKES: Yes, I do.

MR. GILBERT: Okay. Do you understand that we cannot postpone this case forever so you may get—

MR. FOWLKES: That's what I am saying.

MR. GILBERT: Do you understand that Judge Friedman, O'Farrell Friedman has instructed you that this case will not be postponed again because of the number of prior postponements. Do you not?

MR. FOWLKES: How many prior ones for the State?

MR. GILBERT: Well, do you understand what the Court's point of view is, don't you?

MR. FOWLKES: Yes, I do.

MR. GILBERT: Okay. You understand we are past the point of arguing whether that is appropriate or not?

MR. FOWLKES: Right. Now I am saying okay.

MR. GILBERT: Do you wish to have Ms. Shepherd and Mr. Janor represent you, or do you wish to have them sit with you and advise you at trial?

MR. FOWLKES: No, I don't.

MR. GILBERT: You don't wish that?

MR. FOWLKES: If she said I am going ahead and me try it, or what the decision going to be with them twelve jurors out there, and I am asking for a private attorney, and if it's possible I cannot have none, I am saying on the transcript will tell itself. I go with the trial to a point. I am getting violated all my rights. I am to point I feel as though my rights have been violated. So if it's not possible I can't postpone the case I will go with the trial under the circumstances. I am going to appeal it anyway.

MS. SHEPHERD: Well, who do you want to represent you, Mr. Fowlkes? Yourself or Mr. Janor and myself?

MR. FOWLKES: I'd rather have a private attorney.

MS. SHEPHERD: That choice you don't have. Your only choice is Mr. Janor and myself. And let me explain it to you, you know a lawyer can be of some assistance. That they can tell you how to pick the jury. They can make legal argument for you. They know the proper way to ask questions. You may want to get some information in, but you may not be able to word the questions correctly, and a lawyer could offer you assistance you may not be able to do on your own. Do you understand that?

MR. FOWLKES: As far as me? I'm not going to strike no jury or State's Attorney can strike a jury or the Public Defender, whatever. I am saying as far as me, I'm not participating in the case. Therefore, you can hand out the sentence, whatever. I'm rejecting an appeal. That's what I'm saying. Give me an appeal bond. That's all I can say.

THE COURT: All right. Fine then. I have made the decision. I think you understand the choices that you have, and what you have done. So although you are discharging your counsel, I am permitting you to do that. I find your decision to do so is not meritorious. That you had ample time to obtain an attorney. This case has dragged on long enough.

\* \* \* \* \* \*

I would like you for the record to state you're asking this Court to discharge both Ms. Shepherd and Mr. Janor.

MR. FOWLKES: Yes. Just bring the witness and I will appeal it.

THE COURT: Thank you.

MR. FOWLKES: I ain't trying to get tried.

MS. SHEPHERD: Are we excused or would you like us to sit for assistance if needed?

THE COURT: Well, sit for assistance if needed.

MS. SHEPHERD: That's okay.

MR. JANOR: That's okay.

THE COURT: Okay. Yes, you will accept it or not?

MR. FOWLKES: No.

THE COURT: You are excused.

MR. JANOR: Thank you, Your Honor.

(WHEREUPON: COUNSEL FOR THE DEFENSE WERE EXCUSED)"

The proceedings continued. The jury found the defendant guilty, and the court sentenced him to six months imprisonment.

The defendant appealed to the Court of Special Appeals, which affirmed. *Fowlkes v. State,* 67 Md.App. 102, 506 A.2d 660 (1986). The defendant then filed a petition for a writ of certiorari, presenting the following question:

"Did the court below err in holding that Md.Rule 4–215(e) abrogates the rule of *State v. Renshaw,* 276 Md. 259 [347 A.2d 219] (1975), and thus, that the trial court did not err in failing to protect petitioner's constitutional right to counsel and instead compelling petitioner to represent himself at trial, after petitioner, on the morning of the first day of trial, refused to 'allow' his assigned public defender to represent him, while at the same time insisting that he did not want to represent himself but merely wanted different counsel?"

Because of the important issue presented, we granted the petition. We shall affirm.

II.

In *State v. Renshaw, supra,* 276 Md. 259, 347 A.2d 219, the defendant, who was charged with escape and assault and battery, attempted, on the morning of trial, to discharge his attorney (an assistant public defender) and to have the court appoint new counsel. The defendant claimed that his attorney believed him to be lying and that the defendant, in turn, lacked confidence in the attorney. Viewing this as an unmeritorious request and an attempt to delay the proceedings, the trial court denied the request for appointment of new counsel; however, the court advised

the defendant that he could "conduct [his] own case" and that his attorney would provide any assistance that the defendant requested. At a bench conference, after some discussion between the trial court and the defendant, the court advised the defendant's attorney: "Mr. Renshaw has elected to proceed without your help. But, if I were you, I would not do anything unless Mr. Renshaw asks you to do it." Thereafter, neither the defendant nor the attorney participated in any substantial manner,[5] and the defendant was convicted. The Court of Special Appeals reversed on nonconstitutional grounds, holding that the trial court erroneously permitted the defendant to waive his right to counsel without conducting the waiver inquiry required under former Maryland Rule 719 c. *Renshaw v. State*, 25 Md. App. 270, 333 A.2d 363 (1975). This Court affirmed, but on different, broader grounds.

This Court in *Renshaw* initially took the position that the trial court and the Court of Special Appeals erred in treating the defendant's actions as constituting a waiver of the right to counsel (276 Md. at 264, 347 A.2d at 223). Instead, the Court stated (276 Md. at 264, 347 A.2d at 223): "We shall affirm the decision of the Court of Special Appeals, not because we think the trial court erred by allowing appellee to waive his right to counsel without first observing the requirements of Rule 719 c, but because in our opinion he had not waived and was instead denied his constitutional right to counsel." The Court went on to emphasize that the defendant did not "indicate a desire or inclination to waive representation" and that at no time "did he express a desire to proceed in proper person" (276 Md. at 266, 347 A.2d at 225). After discussing the *Faretta* right of self-representation, the *Renshaw* opinion indicated that where the accused does not effectively waive counsel and elect his *Faretta* right of self-representation, "the court

---

**5.** The defendant remained silent throughout the proceedings. The attorney participated only after the jury had rendered its verdict. Before the court imposed the sentence, the defendant permitted the attorney to argue certain mitigating circumstances.

must take steps to insure that the accused is represented by counsel even if he professes his unwillingness to have a lawyer." 276 Md. at 268, 347 A.2d at 226. The Court continued (*ibid.*): "[W]here the accused fails to waive his right to counsel by making an unequivocal choice, but merely insists on a different lawyer, effective legal representation must be required by the court." Consequently, the Court concluded (276 Md. at 270, 347 A.2d at 227): "No waiver having been made here, the trial court should have ordered counsel to continue to render the fullest possible legal representation under the circumstances, with or without the cooperation of the defendant. . . ."

Thus, under the *Renshaw* opinion, the following dichotomy appears to exist when a defendant makes an unmeritorious request to discharge counsel at or on the eve of trial: either the defendant waives the right to counsel by expressly and unequivocally renouncing any desire for any legal representation whatsoever or, there having been no waiver, the trial court must order current counsel to remain in the case despite the defendant's objections. *Renshaw* does not seem to acknowledge a third possibility that, by his actions, a defendant might waive the right to counsel even while asserting, adamantly or ambivalently, that he desires some legal representation. *Renshaw* seems to take the position that a defendant cannot waive the right to counsel unless he is willing to exercise his *Faretta* right of self-representation.

Although this Court has never expressly reexamined *Renshaw*, we have departed somewhat from the rationale of that opinion.

A few years after *Renshaw*, in *Snead v. State, supra,* 286 Md. 122, 406 A.2d 98, we indicated that a defendant might waive the right to counsel even if his renunciation of any legal representation was simply a fall-back position that he reluctantly adopted after the court denied his demand for different counsel. In *Snead*, the defendant, on the day of trial, expressed dissatisfaction with his assistant public defender and requested a delay so that his family could hire

a private attorney. Only when the trial judge refused to grant a postponement did Snead declare, "I don't want no attorney then." The judge ignored this assertion and ordered the assistant public defender to continue representing him. Snead was convicted, and the Court of Special Appeals affirmed. We reversed, holding (286 Md. at 127, 406 A.2d 101) that "any statement by the defendant from which the court could reasonably conclude that the defendant desired self-representation would be sufficient" to trigger an inquiry concerning the right of self-representation. This Court concluded (286 at 131, 406 A.2d at 103): "Snead's statement that 'I don't want no attorney then,' was, in the circumstances, a declaration sufficient to require an inquiry to ascertain whether he truly wanted to represent himself." *See also Leonard v. State*, 302 Md. 111, 124, 486 A.2d 163, 169 (1985).

The next case pertinent to the rationale of *Renshaw* was *Howell v. State*, 293 Md. 232, 443 A.2d 103 (1982). There, three weeks before the defendant's murder trial was to begin, his privately retained counsel withdrew because of a potential ethical conflict. Although the defendant was eligible for its services, the Office of the Public Defender refused to represent him unless he agreed to a postponement, and the trial judge urged the defendant to do so. The defendant, however, refused, insisting that he wanted to be tried within the 180 days prescribed by Art. 27, § 591.[6] The trial judge demanded that the defendant choose between his right to counsel and his statutory right to be tried within 180 days. The defendant adamantly refused to make such a choice and continued to assert that he wanted counsel, that he did not waive his right to counsel, but that he wanted to be tried within 180 days. The trial judge ruled that the defendant's refusal to agree to a postponement constituted a knowing and intelligent waiver of the right to counsel. Thus, throughout his four-day trial the defendant was unrepresented. He was convicted, and the Court of

---

6. *See* footnote 3, *supra.*

Special Appeals affirmed. This Court reversed. Because the defendant at all stages of the proceedings persistently asserted his desire for representation, never indicated a desire or inclination to waive representation, and engaged in no conduct amounting to a waiver, we held that there was no waiver of the right to counsel (293 Md. at 241, 443 A.2d at 107). We suggested, however, that, through his conduct, a defendant might waive the right to counsel without electing self-representation (*ibid.*): "Under certain circumstances, the assertion of the right to counsel, if part of a strategy for delay, may be conduct that constitutes a waiver." Because the defendant in *Howell* insisted that the trial not be delayed, and did nothing more than insist on being afforded his constitutional and statutory rights, we concluded that his actions "cannot be regarded as conduct that constitutes a waiver of the accused's right to counsel." (*Ibid.*) Nevertheless, by recognizing that waiver can occur even if a defendant does not renounce his desire for legal representation, *Howell* represents a clear departure from the theory of *Renshaw*.

 In 1984 this Court promulgated Maryland Rule 4–215(e), which provides as follows:

"(e) **Discharge of Counsel—Waiver.**—If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court

permits the defendant to discharge counsel, it shall comply with subsections (a)(1)–(4) of this Rule if the docket or file does not reflect prior compliance."

Rule 4–215(e) embodies the principle, recognized earlier in the *Howell* case, that an unmeritorious discharge of counsel and request for new counsel, in an apparent effort to delay the trial, may constitute a waiver of the right to counsel. The adoption of the Rule thus represents another departure from the *Renshaw* holding that an unmeritorious discharge of counsel, coupled with a demand for the appointment of different counsel and the refusal to elect self-representation, could not constitute a waiver of the right to counsel. Rule 4–215(e) permits a trial court to treat such conduct as a waiver, provided that the court first informs the defendant "that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel" and that the court otherwise complies with the requirements of the Rule.

Another rule promulgated by the Court is also somewhat inconsistent with the *Renshaw* rationale. Rule 4–215(d) (formerly Rule 719 d. 2), adopted about a year after the *Renshaw* decision, provides that a defendant may waive the right to counsel by neglecting or refusing to obtain counsel. In *Crowder v. State*, 305 Md. 654, 656–657, 506 A.2d 240 (1986), we considered the validity of such a provision to be clearly established. After citing *Howell v. State, supra,* and numerous decisions from other jurisdictions, the *Crowder* opinion stated (305 Md. at 657, quoting *United States v. Arlen*, 252 F.2d 491, 494 (2d Cir.1958)):

" '[W]here a defendant able to retain counsel has been advised by the court that he must retain counsel by a certain reasonable time, and where there is no showing why he has not retained counsel within that time, the court may treat his failure to provide for his own defense as a waiver of his right to counsel and require such defendant to proceed to trial without an attorney.' "

*See also Leonard v. State, supra,* 302 Md. at 126–127, 486 A.2d 163.

■ In our view, the position adopted in this Court's opinions after *Renshaw* and in Rule 4–215(e) is sound and does not infringe the right to counsel under the Sixth Amendment and under Article 21 of the Maryland Declaration of Rights. An accused who, at or shortly before trial and without justification, insists on discharging his counsel and demands the appointment of new counsel, may properly be deemed to have waived his right to counsel if he is sufficiently informed in accordance with Rule 4–215 so that his discharge of counsel represents knowing, intelligent, and voluntary action on his part. To the extent that this Court's *Renshaw* opinion is inconsistent with this view, the opinion is disapproved.

The *Renshaw* holding that there can be no waiver when a defendant insists, without justification, upon the discharge of current counsel and the appointment of new counsel, and that current counsel should be directed to continue representing the defendant, is unworkable in many circumstances. A defendant, while refusing to elect self-representation, may be so adamant in his unmeritorious insistence that current counsel not represent him, that continuation of the trial with the presence of current counsel would be virtually impossible. Rule 4–215(e), however, gives the trial judge a degree of flexibility depending upon the situation. Under some circumstances when the defendant makes an unmeritorious request to discharge counsel, it may be appropriate and feasible not to permit the discharge of counsel.[7] Under

---

7. In this situation, where the trial court refuses to permit the discharge of counsel, and when the defendant has said nothing indicating a desire for self-representation, courts have consistently held that the defendant cannot later successfully contend that he was denied his *Faretta* right of self-representation, as he never exercised that right. *See, e.g., People v. Potter,* 77 Cal.App.3d 45, 50, 143 Cal.Rptr. 379, 382 (1978); *Perry v. United States,* 364 A.2d 617, 620 (D.C.App.1976); *State v. Stinson,* 424 A.2d 327, 333 (Me.1981); *State v. Hutchins,* 303 N.C. 321, 339, 279 S.E.2d 788, 800 (1981); *State v. Garcia,* 92 Wash.2d 647, 655, 600 P.2d 1010, 1015 (1979).

other circumstances, the trial judge might decide to permit the discharge in accordance with the authorization in Rule 4–215(e) but have counsel remain available on a standby basis. Under yet other circumstances, the trial judge may have little choice but to permit the discharge and excuse counsel. Contrary to *Renshaw,* we do not believe that the constitutional right to counsel precludes this degree of flexibility when the defendant, in an apparent effort to delay the trial, makes an unjustified demand for the discharge of his lawyer without electing self-representation, and when the defendant is fully advised in accordance with Rule 4–215 and the constitutional standards for waiver.

■ Our conclusions in this case are fully in accord with settled principles concerning the constitutional right to counsel. Courts have consistently held that the right to counsel does not give an accused the unfettered right to discharge current counsel and demand different counsel shortly before or at trial. Although the right to counsel generally embodies a right to retain counsel of one's choice, a defendant may not manipulate this right so as to frustrate the orderly administration of criminal justice. *See May-nard v. Meachum,* 545 F.2d 273, 278 (1st Cir.1976); *Kates v. Nelson,* 435 F.2d 1085, 1088–1089 (9th Cir.1970); *United States ex rel. Davis v. McMann,* 386 F.2d 611, 618–619 (2d Cir.1967), *cert. denied,* 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968); *United States v. Bentvena,* 319 F.2d 916, 936 (2d Cir.), *cert. denied,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963); *State v. Harper,* 381 So.2d 468, 470–471 (La.1980); *Rahhal v. State,* 52 Wis.2d 144, 147–148, 187 N.W.2d 800, 803 (1971). Moreover, for indigent defendants unable to retain private counsel, the right to counsel is but a right to effective legal representation; it is not a right to representation by any particular attorney. *See, e.g., State v. DeLuna,* 110 Ariz. 497, 520 P.2d 1121, 1124 (1974); *State v. Harper, supra,* 381 So.2d at 470.

Consequently, at some point, unless the defendant can show a meritorious reason for the discharge of current counsel, the appointment of substitute counsel is simply not

an option available to the defendant. At such a point, a trial court may constitutionally require a defendant to choose between proceeding with current counsel and proceeding pro se; the defendant's knowing and intelligent refusal to proceed with current able counsel has repeatedly been deemed to constitute a voluntary waiver of the right to counsel. *See, e.g., Richardson v. Lucas,* 741 F.2d 753, 757 (5th Cir.1984); *United States v. Moore,* 706 F.2d 538, 540 (5th Cir.), *cert. denied,* 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983); *Maynard v. Meachum, supra,* 545 F.2d at 278; *United States ex rel. Testamark v. Vincent,* 496 F.2d 641, 643–644 (2d Cir.1974), *cert. denied,* 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 105 (1975); *Glenn v. United States,* 303 F.2d 536, 543 (5th Cir.1962); *Pizarro v. Harris,* 507 F.Supp. 642, 646 (S.D.N.Y.1981); *United States ex rel. Torry v. Rockefeller,* 361 F.Supp. 422, 427 (W.D.N.Y.1973); *State v. Castoe,* 114 Ariz. 47, 51, 559 P.2d 167, 170–171 (Ct.App.1976); *State v. Harper, supra,* 381 So.2d at 471; *State v. Wulffenstein,* 733 P.2d 120, 121 (Utah 1986), *cert. denied,* — U.S. —, 108 S.Ct. 47, 98 L.Ed.2d 12 (1987); *State v. Scarbrough,* 55 Wis.2d 181, 188, 197 N.W.2d 790, 793–794 (1972).[8]

We conclude that, under the Sixth Amendment and Article 21 of the Maryland Declaration of Rights, a defendant's unmeritorious refusal to proceed with current counsel may constitute a waiver of the right to counsel, provided the defendant acts knowingly and intelligently. Therefore, we believe that the procedure set forth in Rule 4–215(e) comports with constitutional requirements.

---

**8.** There is, however, a minority view which is in accord with the position we adopted in *Renshaw. See Patton v. North Carolina,* 315 F.2d 643 (4th Cir.1963); *State v. McCombs,* 81 N.J. 373, 378, 408 A.2d 425, 427 (1979); *People v. Sawyer,* 83 A.D.2d 205, 208, 443 N.Y.S.2d 926, 928 (1981), *aff'd on other grounds,* 57 N.Y.2d 12, 438 N.E.2d 1133, 453 N.Y.S.2d 418 (1982), *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983); *Thomas v. State,* 550 S.W.2d 64, 68 (Tex.Crim. App.1977).

### III.

In the case at bar, the trial court fully complied with Rule 4–215(e), and the defendant Fowlkes effectively waived the right to counsel.

■ Rule 4–215(e) first requires the trial court to assess whether the defendant's request to discharge counsel is meritorious. In this case, the defendant at various points advanced several different reasons for his request. He claimed that his attorney did not have "the true facts," that she could not represent him "on behalf of honesty," and that she had not diligently sought to obtain the appearance of his witnesses. The trial judge found these reasons unmeritorious. She stated that the defendant's attorney "was highly competent" and had "had plenty of time to prepare." Moreover, she noted that the absent witness had failed to appear only because the defendant had supplied an incorrect address.

The record fully supports the trial judge's conclusion that the defendant's request was unmeritorious. The judge had an opportunity to assess Ms. Shepherd's competence and dedication during pretrial proceedings and the circumstances thereafter. The eight months that elapsed between the defendant's indictment and the trial date surely afforded more than enough time for preparation and for the defendant to find an attorney more to his liking. The judge was entitled to credit Ms. Shepherd's statements concerning her efforts to summon the missing witness. Moreover, from the defendant's own statements, the judge could have concluded that the defendant was motivated less by dissatisfaction with his attorney than by an unjustified desire for delay. According to Mr. Janor, the defendant objected not only to representation by the Office of the Public Defender but also to the trial going forward under any circumstances. In addition, after the defendant discharged his attorneys, he admitted, "I ain't trying to get tried."

Under Rule 4–215(e), a trial court may grant an unmeritorious request to discharge counsel only after "informing the

defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel." In this case, the trial judge on numerous occasions warned the defendant that, if he discharged the two Assistant Public Defenders, he would have no choice but to represent himself. Consequently, the trial judge complied with this aspect of Rule 4–215(e).

■ Finally, Rule 4–215(e) provides that, "[i]f the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)–(4) of this Rule," unless the docket or file reflects prior compliance. Rule 4–215(a)(1)–(4) provides as follows:

"**(a) First Appearance in Court Without Counsel.**— At the defendant's first appearance in court without counsel, the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel."

Rule 4–215(b) states in pertinent part as follows:

"**(b)** ... [T]he court may not accept the waiver until it determines, after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, that the defendant is knowingly and voluntarily waiving the right to counsel. If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with the section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any

subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so."

These requirements implement the constitutional mandate for waiver of the right to counsel. *Snead v. State, supra,* 286 Md. at 130, 406 A.2d at 102, and cases cited there. Compliance with these requirements is necessary to ensure that the defendant has knowingly and intelligently waived the right to counsel. *See Parren v. State, supra,* 309 Md. at 282, 523 A.2d at 608. The requirements were fully satisfied here.

■ As to subsections (a)(1)–(3), the record contains a copy of the charging document in the defendant's case. This document, which bears the defendant's signature, contains a notice of the right to counsel; therefore, this document demonstrates compliance with subsection (a)(1). The record also shows that, on August 28, 1984, the defendant signed a "Notification of Right to Counsel." He thereby acknowledged that he had been advised of the nature of the charges against him, the allowable penalties, his right to be represented by a lawyer, and the important and substantial assistance that a lawyer might provide. The colloquy in open court, set forth earlier in this opinion, reveals that he was again advised of these matters. Consequently, the "Notification of Right to Counsel" document and the trial transcript demonstrate compliance with subsections (a)(2)–(3).

■ Rule 4–215 also requires that the trial court conduct an inquiry to determine whether the defendant is knowingly and intelligently waiving the right to counsel. In this case, the State's Attorney, at the trial judge's request, undertook a thorough waiver inquiry on the day of trial. This inquiry established that the defendant was mentally competent to

decide whether to · waive the right to counsel, that he understood the nature of that right, and that he appreciated the consequences of electing to forego the assistance of his appointed counsel.

The defendant Fowlkes effectively waived his right to counsel in this case.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.