20 A.3d 812

**Ramon LOPEZ**

v.

**STATE of Maryland.**

**No. 24, Sept. Term, 2008.**

Court of Appeals of Maryland.

May 25, 2011.

20

Piedad Gomez, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore, MD), on brief, for petitioner.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE (Retired, Specially Assigned), J.

Near the beginning of the trial of this criminal case, after the prosecution's first witness had completed his direct testimony, and before cross-examination by the defense, the Circuit Court permitted the defendant-petitioner, Ramon Lopez, to discharge his attorney and represent himself. In allowing Lopez to discharge his attorney, and accepting his waiver of the right to counsel, the Circuit Court, *inter alia,* failed to inform Lopez of the full range of penalties he faced as a subsequent offender. Moreover, the record does not show that Lopez had previously been told of the maximum penalties he faced as a subsequent offender. The issue before us is whether, under the Sixth Amendment to the United States Constitution, applicable to state proceedings by virtue of the

Fourteenth Amendment, and Article 21 of the Maryland Declaration of Rights, Lopez's decision to waive counsel and to represent himself satisfied "the *Johnson v. Zerbst*[1] standard of an 'intelligent and knowing' waiver" of counsel. *Curtis v. State*, 284 Md. 132, 150, 395 A.2d 464 (1978).

## I.

Petitioner Ramon Lopez was charged by information, filed in the Circuit Court for Caroline County, with possessing marijuana, importing into Maryland between 5 and 45 kilograms of marijuana, and related offenses. Lopez first appeared before a District Court Commissioner on April 4, 2004, but there is no record of what he was told at that proceeding. The first recorded proceeding was a bail review hearing conducted on April 5, 2004, before a judge of the District Court of Maryland, Caroline County. At the time, Lopez was not represented by counsel, and the following exchange occurred (emphasis added):

"THE COURT: Mr. Lopez, you've been charged with four crimes, one of which is transporting a large volume of marijuana, which has *a maximum penalty of ten years in jail* and/or a ten thousand dollar fine. You are also charged with possession of marijuana with intent to distribute, which has a *maximum penalty of five years* in jail and/or a five thousand dollar fine. You've been charged with one count of possession, simple possession of marijuana, which has a maximum penalty of a year in jail and/or a thousand dollar fine. You are charged with possession of drug paraphernalia, which as a first offender would have a maximum penalty of five hundred dollars. *As a subsequent offender that could be up to two years in jail.* Did you receive a copy of those four charges?

"LOPEZ: Yes, sir.

"THE COURT: And do you understand what you're charged with and what the possible penalties are?

---

1. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

"LOPEZ: Yes, sir."

Consequently, Lopez was told on April 5th, by a judge of the District Court, that he faced maximum penalties of 10 years imprisonment on the most serious charge and 5 years imprisonment on the next to the most serious charge. Actually, as a subsequent offender, he faced 20 years imprisonment on the first charge and 10 years imprisonment on the second charge. The only statement about the maximum allowable penalties which was accurate related to the least serious charge. In the seven months between April 5, 2004, and the start of his trial on November 8, 2004, Lopez appeared before several judges in both the District Court and the Circuit Court. The record of those proceedings shows that Lopez was never informed of the range of allowable maximum penalties which he faced as a subsequent offender. In fact, nothing was said about the allowable penalties at any of those proceedings.

At the start of Lopez's criminal trial on November 8, 2004, an assistant public defender represented him. After the State had finished direct examination of its first witness, and before cross-examination began, the following took place:

"THE COURT: Cross-exam.

"[DEFENSE ATTORNEY]: Cross-examination is up to me.

"MR. LOPEZ: Your Honor at this time I'd like to address the Court, there's a conflict . . .

"[DEFENSE ATTORNEY]: Hold on we have to do it up at the bench. Come on.

THE COURT: Wait a minute, you may come up. You may come up.

(Bench conference. Counsel and defendant approach the bench and the following ensued.)

"MR. LOPEZ: (Inaudible.)

"THE COURT: It what?

"MR. LOPEZ: And I wish to assert my right to cross-examine.

"[DEFENSE ATTORNEY]: At this point, Your Honor, it appears that the client is not satisfied with my representation and wishes to remove me from the proceeding.

"LOPEZ: (Inaudible.)

"THE COURT: With what?

"LOPEZ: I wish to proceed with cross-examination. (Inaudible . . .)

"THE COURT: You do understand that because you are not a lawyer gives you absolutely no latitude in asking questions. That if your questions are not properly framed and they are objected to, the objection will be sustained. So you may well be disputing your own purpose.

"LOPEZ: Your Honor, upon cross-examination the statements alone and the inconsistencies in his statements. I don't see where I will be (inaudible . . .) and in fairness I should be allowed to do so.

"THE COURT: Do you want your attorney then to be excused entirely from the case or . . .

"LOPEZ: (Inaudible . . .)

"[DEFENSE ATTORNEY]: I don't believe that the Office of the Public Defender allows (inaudible).

"LOPEZ: (Inaudible . . .)

"THE COURT: As long as you have a lawyer it is not your right. It is the right to be exercised through an attorney. However, if you are uncomfortable with her, I am not going to require that she stay. But I don't think it's fair that she should have to sit there and be referred to as an exhibit. Do you?

"LOPEZ: Your Honor, as I said before . . . (inaudible).

"THE COURT: She can withdraw completely?

"LOPEZ: (Inaudible.)

"THE COURT: And you understand at that point, you'll be without legal representation. Do you understand that?

"LOPEZ: I understand.

"THE COURT: And you understand that ah, you will be responsible for arguing the case to the jury in accordance

with what is justified.... You'll be responsible for asking upon any instructions submitted by the State. It will be up to you to present any instructions, which you wish to be given on your behalf. And how do you propose to do that?

"LOPEZ: Excuse me?

"THE COURT: How do you propose to do that?

"LOPEZ: Yes, sir. Your Honor, I am.

"THE COURT: You can do the instructions?

"LOPEZ: Um, I'm asking you to instruct the jury to please excuse me if I make mistakes seeing as how I'm not a lawyer.

"THE COURT: I will not do that.

"LOPEZ: (Inaudible.)

"THE COURT: You have no right to that.

"LOPEZ: (Inaudible.)

"THE COURT: You have absolutely no right. If you want to undertake to represent yourself, you do it under the same rules as everybody else. There's nothing special about your case.

"LOPEZ: Your Honor ...

"THE COURT: There's nothing special about you.

"LOPEZ: Your Honor, you just stated that it was up to me to ask for instructions.

"THE COURT: That's right."

The Court continued to admonish Lopez that he would not be "entitled to ... special consideration with regard to presentation of the case because you're a layman." Lopez was adamant that he wished to represent himself, alleging that his attorney had lied to him. After listening to Lopez's concerns about his counsel, the judge ruled that the defendant's "objections to the conduct of [his] attorney are wholly unfounded." Thereafter, the following occurred:

"THE COURT: ... Now we're going to proceed and how is it that you want to proceed. Do you want an attorney?

"LOPEZ: Um, I wish to represent myself at this time.

"THE COURT: ... You understand that you have a right to a lawyer. A lawyer can render very important assistance to you by helping you explain the matter more fully.

"LOPEZ: Well, I asked if I could cross-examine the witnesses which I think is ah, allowable because I am the defendant and it is my right to cross-examine. But since the Court has stated that I am not allowed to do so if [the defense attorney] stays as my attorney, then I'm forced to ask her to refrain from my case ..."

The judge told Lopez that he could choose either to represent himself or to be represented by an attorney, but the defendant had to choose one of those options to proceed. The judge explained:

"THE COURT: ... [I]f you have a lawyer, it is for the lawyer to do the cross-examining. We cannot have lawyers and defendants both doing it.... I'm sorry that's just the rule. You are right. You have a right to cross-examine, but you do not have a right to cross-examine if you have an attorney. Now that's my ruling. Now, where do we go from there?

"LOPEZ: What I've already stated, Your Honor, that I wish to proceed with [the] trial then, that I want to represent myself at this time.

"THE COURT: You want to represent yourself at this time, all right. Thank you. * * * "

For the remainder of the trial, the defendant represented himself. At the close of all of the evidence, the trial judge granted Lopez's motion for judgment of acquittal on the charges of possession of marijuana with intent to distribute and use of paraphernalia. Thereafter, the jury convicted Lopez of possessing marijuana and importing between 5 and 45 kilograms of marijuana into Maryland.

When the court reconvened for sentencing, Lopez was once again represented by a public defender. At the sentencing, the prosecutor stated that he was seeking to double the maximum penalty for the petitioner's convictions pursuant to

Maryland Code (2002), § 5–905(a) of the Criminal Law Article.[2] Lopez was sentenced to 20 years imprisonment for importing marijuana. He was also sentenced to a one year concurrent term of imprisonment for marijuana possession.

Lopez appealed to the Court of Special Appeals, raising several issues. The Court of Special Appeals, in an unreported opinion, affirmed. With regard to the waiver of counsel issue, the intermediate appellate court concluded that Lopez's "waiver of counsel was knowing and voluntary" as shown "by the court's extensive on-the-record colloquy with" Lopez. The Court of Special Appeals "disagree[d] with [Lopez] that the

---

**2.** Section 5–905(a) states as follows:

"**§ 5–905. Repeat offenders.**

(a) *In general.*—A person convicted of a subsequent crime under this title is subject to:

(1) a term of imprisonment twice that otherwise authorized;

(2) twice the fine otherwise authorized; or

(3) both."

&ast;  &ast;  &ast;

Additionally, Maryland Rule 4–245 requires that notice be given to subsequent offenders of the possibility of additional penalties. Rule 4–245 states in relevant part:

"**Rule 4–245. Subsequent offenders.**

(a) **Definition.** A subsequent offender is a defendant who, because of a prior conviction, is subject to additional or mandatory statutory punishment for the offense charged.

(b) **Required notice of additional penalties.** When the law permits but does not mandate additional penalties because of a specified previous conviction, the court shall not sentence the defendant as a subsequent offender unless the State's Attorney serves notice of the alleged prior conviction on the defendant or counsel before the acceptance of a plea of guilty or nolo contendere or at least 15 days before trial in circuit court or five days before trial in District Court, whichever is earlier...."

&ast;  &ast;  &ast;

The prosecuting attorney, at the sentencing, claimed that the requisite notice had been provided to Lopez in a letter sent to him at the Caroline County Detention Center, dated April 15, 2004. The letter stated that, "[u]pon a conviction ... the State will seek enhanced penalties as a subsequent offender, based on prior convictions" of drug-related offenses in Texas. The letter concluded: "The maximum penalty will be doubled pursuant to Criminal Law Article 5–905." The brief letter, consisting of two sentences, did not mention any periods of time, such as 10 years, 20 years, etc.

[trial] court was required to inform him of the maximum penalty he faced if convicted of all charges, including the enhanced penalty the State was seeking." The appellate court relied upon the fact that Lopez "was advised at the bail review hearing in District Court of the charges and the maximum penalty for each charge, including that, as a subsequent offender, he could face additional incarceration." The Court of Special Appeals held that the trial court "was not required" to "re-apprise [Lopez] of the charges and penalties."

Lopez filed in this Court a petition for a writ of certiorari, presenting the single issue of whether his waiver of the right to counsel complied with constitutional requirements in light of the fact that he was never informed of the range of allowable punishments which he faced as a subsequent offender. The State did not file a cross-petition for a writ of certiorari. This Court granted Lopez's certiorari petition, *Lopez v. State*, 405 Md. 63, 949 A.2d 651 (2008), and we shall reverse.

## II.

Lopez points out that he was never told that he could receive 20 years in prison if convicted of importing a large quantity of marijuana into Maryland. He asserts that he "waived counsel with the understanding that the most severe penalty he could get, as a District Court judge had told him seven months earlier, was 10 years." (Petitioner's brief in this Court at 12). According to Lopez, his waiver of counsel was not "made with full knowledge of the risks of proceeding without an attorney. His waiver was therefore not knowingly and intelligently made." (*Ibid.*) Lopez relies exclusively upon the Sixth Amendment to the United States Constitution, Article 21 of the Maryland Declaration of Rights, and cases dealing with those constitutional provisions.

The State devotes a considerable portion of its brief to a discussion of Maryland Rule 4–215, entitled "Waiver of counsel." Rule 4–215, *inter alia*, states that a court cannot accept a criminal defendant's waiver of counsel unless a court has

first advised the defendant of various matters, one of which, under subsection (a)(3) of the Rule, is "the allowable penalties, including mandatory penalties, if any." [3]   The State argues

---

3.   Rule 4–215 provides in pertinent part as follows (emphasis added):
"**Rule 4–215.   Waiver of counsel.**

"(a) **First appearance in court without counsel.**   At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) *Advise the defendant of* the nature of the charges in the charging document, and *the allowable penalties, including mandatory penalties, if any.*

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

The clerk shall note compliance with this section in the file or on the docket.

"(b) **Express waiver of counsel.**   If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, the court determines and announces on the record that the defendant is knowingly and voluntarily waiving the right to counsel.   If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket.   At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel.   After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so.

\*      \*      \*

(e) **Discharge of counsel—Waiver.**   If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request.   If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresent-

that the entire Rule 4–215 is totally inapplicable once "meaningful trial proceedings" have begun. Therefore, the State's argument continues, there need not be compliance with subsection (a)(3) of the rule.[4]

■ The State does acknowledge, however, that the requirements of the Sixth Amendment and Article 21 of the Maryland Declaration of Rights are applicable to a waiver of counsel after a criminal trial begins. *See State v. Brown,* 342 Md. 404, 428, 676 A.2d 513, 525 (1996) (This Court, among other things, held that, after the trial had begun, the trial court "must conduct an inquiry" into "the defendant's reason for dismissal of counsel.... This inquiry must meet constitutional standards. *See, e.g., Johnson v. Zerbst,* 304 U.S. 458, 464–465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)"). *See also Fowlkes v. State,* 311 Md. 586, 604, 536 A.2d 1149, 1158 (1988) ("An accused who, at . . . trial and without justification, insists on discharging his counsel . . ., may properly be deemed to have waived his right to counsel if he is sufficiently informed . . . so that his discharge of counsel represents knowing, intelligent, and voluntary action on his part"). The State, referring to the advice Lopez was given by a District Court

---

ed by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance."

4. The State justifies its lengthy discussion of Rule 4–215, and its argument that the Rule is always inapplicable after the criminal trial begins, by asserting that Lopez argues that there must be "full compliance with Maryland Rule 4–215 prior to allowing a represented defendant to discharge counsel" during the trial. (Respondent's brief in this Court at 4). The State's assertion is erroneous. In the portion of Lopez's brief which the State cites in support of the assertion, Lopez simply relies on a prior opinion where this Court relied on both Rule 4–215 and a leading Supreme Court case applying the Sixth Amendment. As previously mentioned, Lopez's argument is based entirely on the Sixth Amendment and Article 21 of the Maryland Declaration of Rights.

judge at the bail review hearing, the letter sent by the prosecuting attorney, and the colloquy at the beginning of the trial, argues that Lopez waived counsel "knowing full well the nature of the charges against him [and] the allowable penalties...." (Respondent's brief in this Court at 10). The State contends that "it was not necessary for ... Lopez to be apprised of specific subsequent offender penalties in order to make a constitutionally valid 'knowing and intelligent waiver' of counsel." (*Id.* at 11).

■ Preliminarily, some comments about Rule 4–215 are in order. The Rule contains detailed procedural requirements concerning waiver of counsel in criminal cases. Rule 4–215 was intended to implement both the Sixth Amendment and the Article 21 right to counsel in criminal cases, as well as the Sixth Amendment right of selfrepresentation. When applicable, its provisions are mandatory, must be strictly complied with, and are not subject to a harmless error analysis. *See, e.g., State v. Camper,* 415 Md. 44, 49, 55–58, 998 A.2d 352, 354, 358–360 (2010); *Brye v. State,* 410 Md. 623, 635, 637, 643–644, 980 A.2d 435, 442–443, 447 (2009); *Knox v. State,* 404 Md. 76, 87, 945 A.2d 638, 645 (2008); *Broadwater v. State,* 401 Md. 175, 182, 931 A.2d 1098, 1102 (2007); *Richardson v. State,* 381 Md. 348, 366–367, 849 A.2d 487, 498 (2004); *Johnson v. State,* 355 Md. 420, 426, 444–449, 735 A.2d 1003, 1006, 1016–1018 (1999); *Moten v. State,* 339 Md. 407, 409–412, 663 A.2d 593, 595–596 (1995); *Snead v. State,* 286 Md. 122, 130, 406 A.2d 98, 102 (1979).

■ In cases where a defendant seeks to discharge his attorney during the trial and the trial judge refuses to permit the discharge, this Court has held that "the mandatory nature of Rule 4–215(e) is inapplicable." *State v. Campbell,* 385 Md. 616, 632, 870 A.2d 217, 226 (2005). In such cases, the issue on appeal is whether "the judge ... abuse[d] his discretion when he denied [the defendant's] request." *Campbell,* 385 Md. at 636, 870 A.2d at 228. *See also State v. Brown, supra,* 342 Md.

404, 676 A.2d 513. This Court in *Fowlkes v. State, supra,* 311 Md. at 604, 536 A.2d at 1158, however, held that a waiver of counsel "*at* or shortly before trial" requires that the defendant be "sufficiently informed in accordance with Rule 4–215" (emphasis added).[5]

We need not decide whether, and to what extent, Rule 4–215 may be applicable to the present case. As previously indicated, Lopez does not rely on Rule 4–215. Although he relies on cases where this Court discusses both Rule 4–215 and the constitutional right to counsel, Lopez's argument, as previously noted, is based entirely on the Sixth Amendment and Article 21 of the Maryland Declaration of Rights.

---

5. In arguing that Rule 4–215 is, in its entirety, inapplicable once a trial begins, the State relies heavily upon *State v. Wischhusen,* 342 Md. 530, 677 A.2d 595 (1996). Although the issue in *Wischhusen* was viewed as "tantamount to a waiver of the right to counsel" (342 Md. at 532, 677 A.2d at 596), the case did not actually involve an attempt to discharge counsel or a waiver of counsel by the defendant. In that case, involving a charge of murder, the defendant was represented by defense counsel throughout the trial. What happened was that, during the second day of the jury's deliberations, the jury sent a note to the judge asking about the difference between first and second degree murder. Defense counsel was not present at the time, but the judge contacted defense counsel by telephone, advised counsel that he, the judge, proposed to respond by rereading his initial jury instructions on the matter, read to counsel his proposed response, and counsel stated that she had no objection to the response. The judge also read his proposed response to the defendant, informed the defendant that the judge had spoken to defense counsel over the telephone, and that defense counsel had no objection to the proposed response. The judge also informed the defendant that the defendant had a right to have his attorney present when the response was given to the jury, and that the judge would wait until the attorney was present before reinstructing the jury if the defendant wished. The defendant replied that the judge could reinstruct the jury without the presence of defense counsel.

In *Wischhusen,* therefore, counsel was representing the defendant with regard to the jury's note, although that representation was by telephone. *Wischhusen's* authority with regard to Rule 4–215 or waiver of counsel is very doubtful. Circumstances similar to what happened in *Wischhusen* are usually analyzed as involving Maryland Rules 4–231, 4–326(c) or (d), and the right to be present. *See, e.g., Denicolis v. State,* 378 Md. 646, 656–659, 837 A.2d 944, 950–952 (2003); *Winder v. State,* 362 Md. 275, 321–324, 765 A.2d 97, 122–123 (2001); *Taylor v. State,* 352 Md. 338, 345–354, 722 A.2d 65, 68–72 (1998).

## III.

■ The guarantee of the right to counsel in criminal cases was summarized in *Parren v. State,* 309 Md. 260, 262–263, 523 A.2d 597, 598 (1987), as follows (footnotes omitted):

" 'The Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee a right to counsel, including appointed counsel for an indigent, in a criminal case involving incarceration.' *Rutherford v. Rutherford,* 296 Md. 347, 357, 464 A.2d 228 (1983). The constitutional guarantees encompass not only the right of a defendant to the effective assistance of a duly licensed attorney at law but also the right of a defendant to appear *in propria persona. Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975); *Leonard v. State,* 302 Md. 111, 119, 486 A.2d 163 (1985). The right of self-representation is independent of the right to the assistance of counsel. *Faretta,* 422 U.S. at 819 n. 15, 95 S.Ct. at 2533 n. 15. The rights 'are mutually exclusive and the defendant cannot assert both simultaneously.' *Leonard,* 302 Md. at 119, 486 A.2d at 166. The right to counsel has been zealously protected by the Supreme Court as a fundamental constitutional right. It is basic to our adversary system of criminal justice. *Faretta,* 422 U.S. at 818, 95 S.Ct. at 2532. Although it may be knowingly and voluntarily waived, the courts indulge every reasonable presumption against its waiver; acquiescence in the loss of such a right is never presumed. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)."

■ Moreover, "[a] defendant may exercise his *Faretta* right of self-representation only if he knowingly, intelligently, and voluntarily waives his right to counsel." *Fowlkes v. State, supra,* 311 Md. at 589, 536 A.2d at 1151. As Judge Battaglia pointed out for the Court in *State v. Campbell, supra,* 385 Md. at 627, 870 A.2d at 223, because a defendant choosing self-representation "is waiving the right to counsel, the court must conduct an inquiry to ensure that the defendant's waiver of counsel is knowing and intelligent. *See* [*State v.* ] *Brown,* 342

Md. at 414, 676 A.2d at 518, citing *Johnson v. Zerbst,* 304 U.S. 458, 464–465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)...." With regard to waiver of the right to counsel, this Court has not distinguished between the right under Article 21 and the right under the Sixth Amendment. *Parren v. State, supra,* 309 Md. at 262–263 n. 1, 523 A.2d at 598 n. 1.

After *Johnson v. Zerbst, supra,* the leading opinion on the constitutional requirements for a waiver of counsel is Mr. Justice Black's opinion announcing the judgment of the Supreme Court in *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). That opinion has been relied upon or cited with approval on numerous occasions, both by the Supreme Court and by this Court. In *Von Moltke,* Justice Black held as follows (332 U.S. at 723–724, 68 S.Ct. at 323, 92 L.Ed. at 320–321, emphasis added):

"We have said: 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.'[6] To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel,[7] a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. *To be valid such waiver must be made with an apprehension of* the nature of the charges, the statutory offenses included within them, *the range of allowable punishments thereunder,* possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a

penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

"[6] *Johnson v. Zerbst*, 304 U.S. 458, 465 [58 S.Ct. 1019, 82 L.Ed. 1461]; see also *Adams v. United States ex rel. McCann*, 317 U.S. 269, 270 [63 S.Ct. 236, 87 L.Ed. 268]."

"[7] *Johnson v. Zerbst*, 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461]; *Glasser v. United States*, 315 U.S. 60, 70 [62 S.Ct. 457, 86 L.Ed. 680]."

*See Schneckloth v. Bustamonte*, 412 U.S. 218, 244 n. 32, 93 S.Ct. 2041, 2056–2057 n. 32, 36 L.Ed.2d 854, 873 n. 32 (1973) (quoting with approval the above-quoted language from *Von Moltke* ); *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975) (citing with approval Justice Black's opinion in *Von Moltke* ).  To the same effect, *see, e.g., Penson v. Ohio*, 488 U.S. 75, 86–87, 109 S.Ct. 346, 353, 102 L.Ed.2d 300, 313 (1988); *Sanders v. United States*, 373 U.S. 1, 20, 83 S.Ct. 1068, 1079, 10 L.Ed.2d 148, 164 (1963); *Moore v. Michigan*, 355 U.S. 155, 161, 78 S.Ct. 191, 195, 2 L.Ed.2d 167, 172 (1957); *Herman v. Claudy*, 350 U.S. 116, 118 n. 3, 76 S.Ct. 223, 224 n. 3, 100 L.Ed. 126, 130 n. 3 (1956).

This Court has quoted with approval and applied the principles of *Von Moltke v. Gillies* in several cases.  Thus, in *Parren v. State, supra*, 309 Md. 260, 523 A.2d 597, this Court, relying on both the constitutional requirements for waiver of counsel and on Rule 4–215, reversed the convictions of two persons who represented themselves at trial.  The reversal rested squarely on the failure of the trial court to advise the defendants of the allowable penalties for the offenses charged. The *Parren* opinion, authored by Judge Orth for the Court, began its discussion of the applicable law as follows (*Parren*, 309 Md. at 272–273, 523 A.2d at 602–603):

"We noted *supra* that the standard applicable to a waiver of the constitutional right to counsel was enunciated by the Supreme Court in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, explicated in *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, and summarized in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562."

After quoting a passage from *Johnson v. Zerbst,* Judge Orth quoted the requirements for waiver of counsel set forth in Justice Black's *Von Moltke* opinion. In reviewing the record in *Parren* and pointing to some factors possibly indicating a knowing and intelligent waiver of counsel, the *Parren* opinion continued (309 Md. at 275–276, 523 A.2d at 604–605, footnote omitted):

"What gives pause in a determination of whether the constitutional standard was satisfied is that the record does not conclusively show that the defendants had 'an apprehension of ... the range of allowable punishments,' *Von Moltke,* 332 U.S. at 724, 68 S.Ct. at 323, for the crimes charged. There is nothing in the record to establish that the defendants were told by the court or by counsel of the penalties involved."

Following a discussion of cases in other jurisdictions and of Rule 4–215, the *Parren* opinion concluded (309 Md. at 282, 523 A.2d at 607–608):

"The Supreme Court of the United States patently deems knowledge on the part of a defendant of the penalties allowable for the charges against him to play an integral role in the preservation of the right [to counsel]. *Von Moltke* expressly set out the factor as a matter to be considered. 332 U.S. at 724, 68 S.Ct. at 323. The United States Court of Appeals for the Fourth Circuit declared that when it is incumbent upon the trial court to determine that a defendant's waiver of his right to counsel is knowing and intelligent, 'the court must assure itself that the defendant knows ... the possible punishment' for the charges against him. *United States v. King,* 582 F.2d 888, 890 (4th Cir. 1978). This Court obviously shares the regard for the vital part which knowledge of the allowable penalties by the defendant plays in the determination of the effectiveness of a waiver of counsel. The provision has persisted in our Waiver Rule through revisions and amendments and has been consistently mandated by the language employed to set it out."

Another case where the defendant represented himself at trial, and where the trial judge failed, *inter alia,* to inform the defendant of the allowable penalties, was *Johnson v. State, supra,* 355 Md. 420, 735 A.2d 1003. In *Johnson,* this Court addressed at length both the constitutional requirements for waiver of counsel and Rule 4–215. With regard to constitutional requirements, the Court, in an opinion by Judge Chasanow, discussed *Von Moltke v. Gillies* in detail, and emphasized the following from that case (355 Md. at 441, 735 A.2d at 1014, emphasis added by the *Johnson* opinion):

> " '[T]he fact an accused may tell [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. *To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'* (Emphasis added)."
>
> "*Von Moltke,* 332 U.S. at 724, 68 S.Ct. at 323, 92 L.Ed. at 321."

In discussing the earlier *Parren v. State* case, the *Johnson* opinion recounted (355 Md. at 447, 735 A.2d at 1017):

> "We reversed the defendants' convictions and ordered a new trial. In applying the waiver inquiry standard outlined in *Von Moltke, supra,* we found that the record did not conclusively demonstrate that the defendants had ' "an apprehension of . . . the range of allowable punishments." ' *Parren,* 309 Md. at 275–76, 523 A.2d at 604 (quoting *Von Moltke,* 332 U.S. at 724, 68 S.Ct. at 323, 92 L.Ed. at 321)."

*See also Leonard v. State,* 302 Md. 111, 120–122, 486 A.2d 163, 167–168 (1985) (Although the decision in the case rested upon a violation of Rule 4–215, the Court also discussed and quoted extensively from *Von Moltke v. Gillies* ).

In cases where the trial court's failure to advise the defendant of allowable punishments related to penalty enhance-

ments for a subsequent offender, this Court has recognized the applicability of *Von Moltke* and the constitutional principle that a valid waiver of the right to counsel must be voluntary, knowing and intelligent. While the opinion in *Knox v. State* purported to be based solely on Rule 4–215, the Court "conclude[d] that ... Rule 4–215 is ambiguous" and construed the Rule in light of constitutional requirements. *Knox, supra,* 404 Md. at 86–91, 945 A.2d at 644–647. Judge Raker for the Court in *Knox* then stated (404 Md. at 90–91, 945 A.2d at 647):

"The court must inform the defendant of the peril he or she faces to permit a 'knowing and intelligent' waiver of counsel, with eyes open to the consequences of that decision.

"The State postures that advising all defendants of potential penalty enhancements applicable to subsequent offenders would impermissibly chill a defendant's right to self-representation. To be sure, the right to self-representation is an integral aspect of the right to counsel. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The right to self-representation, however, presumes that defendant has waived counsel 'knowingly and intelligently.' *Id.* at 835, 95 S.Ct. at 2541. A defendant cannot effectively waive counsel without an 'apprehension ... of the range of allowable [punishments].' *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). A defendant cannot have full understanding of the consequences of the waiver of counsel if the defendant is unaware of the more severe potential penalties because of prior convictions. A chilling effect, if any, is *de minimis* compared to the surprise at the end of the day when a defendant learns of the mandatory penalty, after trial and just before sentencing."

More recently, in *Brye v. State, supra,* 410 Md. 623, 980 A.2d 435, the defendant was charged with various offenses, some of which carried mandatory penalties and some of which carried enhanced penalties. At pre-trial appearances before different circuit judges, the defendant was given "conflicting and inaccurate advisements of the penalties for some of the charges," 410 Md. at 626, 980 A.2d at 437. Several of the

advisements understated the maximum penalties, and one of the advisements "grossly understated the potential penalties [the defendant] faced." 410 Md. at 639, 980 A.2d at 444. The defendant "waived" his right to counsel, represented himself at the trial, and was convicted of second degree assault. This Court, in an opinion by Judge Harrell, reversed the defendant's conviction on the ground that the "waiver" of counsel was invalid. While the reversal was based upon the violation of Rule 4–215, the Court reviewed the constitutional requirements, pointing out that the purpose of Rule 4–215 was "the implementation and protection of a defendant's fundamental right to counsel," 410 Md. at 635, 980 A.2d at 442. The Court concluded on a constitutional note (410 Md. at 640–641, 980 A.2d at 445):

"While a layperson may be expected to comprehend accurate advisements given cumulatively at separate appearances, we draw the line at expecting a layperson to be able to discern which is the correct advisement from a series of conflicting and often incorrect advisements from different judges. On this record, Brye is not deemed by us as having 'effectively waive[d] counsel' because these advisements did not give him a valid and clear basis from which ' "apprehension . . . of the range of allowable penalties" ' may be inferred. *Knox,* 404 Md. at 91, 945 A.2d at 647 (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948))."

*See also State v. Camper, supra,* 415 Md. at 56, 998 A.2d at 359 (The Circuit Court, in determining that the defendant had waived counsel, failed to advise the defendant that he faced enhanced penalties as a subsequent offender. In holding that the conviction should be reversed, Judge Barbera for the Court stated "that without advisement of the more severe potential penalties resulting from prior convictions, a defendant cannot effectively 'evaluate the risks of foregoing the assistance of counsel,' " quoting *Knox v. State, supra,* 404 Md. at 91, 945 A.2d at 647).

It is clear, therefore, that under the Sixth Amendment and Article 21 of the Maryland Declaration of Rights, a valid

waiver of counsel in a criminal case requires that the accused be informed of "the range of allowable punishments" for the charges against him or her, including applicable enhanced penalties.

As earlier mentioned, the State argues that the advice given to Lopez by a District Court judge at the bail review hearing, the April 15, 2004, letter sent to Lopez by the prosecuting attorney, and the colloquy between the trial judge and Lopez at the beginning of the trial, informed Lopez of the allowable penalties. The Court of Special Appeals held that the advice given to Lopez at the bail review hearing informed him of the applicable penalties.

The State's reliance on the letter from the prosecutor and the colloquy at the beginning of the trial is entirely misplaced. Neither the letter nor the colloquy among the trial judge, Lopez, and counsel, mentioned anything about the particular range of penalties for the charges against Lopez.

The State's and the Court of Special Appeals' reliance on the advice given to Lopez at the District Court bail review hearing is also misplaced. Preliminarily, this Court has taken the position that, with regard to advisements required for a valid waiver of the right to counsel in the Circuit Court, one "may not rely on advisements given during a District Court bail review hearing where the charges involved ultimately were within the exclusive original jurisdiction of the Circuit Court," *Broadwater v. State, supra,* 401 Md. at 200, 931 A.2d at 1112. *See Johnson v. State, supra,* 355 Md. at 456–457, 735 A.2d at 1022–1023. Since the most serious charges against Lopez were felonies within the exclusive jurisdiction of the Circuit Court, the Circuit Court had exclusive jurisdiction over all of the charges. Maryland Code (1974, 2006 Repl.Vol.), § 4–302(f) of the Courts and Judicial Proceedings Article. Accordingly, under *Broadwater* and *Johnson,* reliance cannot be placed on the District Court bail review hearing.

Even if we consider the advice given at the District Court bail review hearing, the State's and Court of Special Appeals'

reliance on the advice given at that hearing is misplaced. The District Judge failed to advise Lopez of the enhanced penalties for the two most serious charges. In fact, by telling Lopez that the importation charge had a maximum penalty of ten years imprisonment and the possession with intent to distribute charge carried a maximum of five years imprisonment, the District Judge gave Lopez inaccurate and misleading advice. The actual maximum penalties were twenty years and ten years imprisonment, and Lopez was sentenced to twenty years imprisonment for the importation offense. *See Brye v. State,* *supra,* 410 Md. at 626, 639, 980 A.2d at 436, 444.

██ The Circuit Court for Caroline County clearly erred when the trial judge failed to inform Lopez of the full range of allowable penalties prior to his waiver of counsel. As this Court stated in *Knox v. State, supra,* 404 Md. at 90, 945 A.2d at 647, "The court must inform the defendant of the peril he or she faces to permit a 'knowing and intelligent' waiver of counsel, with eyes open to the consequences of that decision." The defendant was not made aware of the consequences he faced, and, therefore, his waiver of counsel was invalid.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY CAROLINE COUNTY.*